**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| APRIL M. FLORES, INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATE | § | |
| OF RICARDO TREVINO III, DECEASED | § | |
| | § | |
|     Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF SAN BENITO, TEXAS, | § | |
| SAN BENITO POLICE DEPARTMENT, | § | |
| MICHAEL GALVAN, DAVID REBOLLADO, | § | CIVIL ACTION NO. _____ |
| VICTOR ESPITIA, JOSE SANTOS, OSCAR | § | |
| LARA, MANUEL ALVAREZ, CAMERON | § | |
| COUNTY, TEXAS, CAMERON COUNTY | § | |
| CONSTABLE PCT 5, EDDIE SOLIS, | § | |
| JOSE ANGEL VILLARREAL AND CARLOS | § | |
| CORDOVA | § | |
| | § | |
|     Defendants. | § | |

<u>PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL</u>

NOW COMES Plaintiff APRIL M. FLORES, Individually and as Representative of the

Estate of RICARDO TREVINO, III, Deceased , complaining of Defendants, the CITY OF SAN

BENITO, TEXAS more particularly the SAN BENITO POLICE DEPARTMENT ("SBPD"), by

and through its agents and servants, MICHAEL GALVAN, DAVID REBOLLADO, VICTOR

ESPICIA, JOSE SANTOS, OSCAR LARA and  MANUEL ALVAREZ, Individually and in their

official capacities as SAN BENITO POLICE DEPARTMENT Officers, CAMERON COUNTY,

TEXAS, more particularly CAMERON COUNTY CONSTABLE PCT 5, by and through its

agents and servants,  EDDIE SOLIS Individually and in his official capacity as CAMERON

COUNTY CONSTABLE PCT 5, JOSE ANGEL VILLARREAL, CARLOS CORDOVA

Individually and in their official capacities as Deputies of CAMERON COUNTY CONSTABLE

PCT 5 and, and for cause would show the Honorable Court as follows:

**I.**

**<u>PRELIMINARY STATEMENT</u>**

1.      This is an action brought by the Plaintiff for the unlawful shooting death of RICARDO TREVINO III that occurred on or about December 7, 2018 against Defendants, the CITY OF SAN BENITO, TEXAS more particularly the SAN BENITO POLICE DEPARTMENT ("SBPD"), by and through its agents and servants, MICHAEL GALVAN, DAVID REBOLLADO, VICTOR ESPICIA, JOSE SANTOS, OSCAR LARA and  MANUEL ALVAREZ, Individually and in their official capacities as SAN BENITO POLICE DEPARTMENT Officers and CAMERON COUNTY, TEXAS more particularly CAMERON COUNTY CONSTABLE PCT 5, by and through its agents and servants,  EDDIE SOLIS Individually and in his official capacity as CAMERON COUNTY CONSTABLE PCT 5, JOSE ANGEL VILLARREAL, CARLOS CORDOVA Individually and in their official capacities as Deputies of CAMERON COUNTY CONSTABLE PCT 5 for their use of excessive and deadly force resulting in the unlawful shooting death of RICARDO TREVINO III ("Trevino") under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

2.      Plaintiff alleges that the City of San Benito, Texas ("City of San Benito") and its policy makers, specifically the San Benito City Commission, Mayor, the San Benito City Manager and former Chief of Police Defendant MICHAEL GALVAN ("Galvan") (collectively referred herein as the "San Benito Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of

2

such acts. The San Benito Policymakers, specifically the San Benito City Commission, Mayor, the San Benito City Manager and former Chief of Police Galvan had a duty, but failed to implement and/or enforce policies, practices and procedures for the SBPD that respected RICARDO TREVINO III's constitutional rights to assistance and protection. Defendant City of San Benito and its Policymakers, specifically the San Benito City Commission, Mayor, the San Benito City Manager and former Chief Galvan's failure to adequately supervise and discipline the SBPD Defendants MICHAEL GALVAN, DAVID REBOLLADO, VICTOR ESPICIA, JOSE SANTOS, OSCAR LARA and  MANUEL ALVAREZ implement the necessary policies and the implementation of unconstitutional policies caused RICARDO TEVINO III's unwarranted and excruciating physical and mental anguish and death. The SBPD Defendants knowingly and consciously disregarded the rights of RICARDO TREVINO III due to their lack of supervision and training described above.

3.      Additionally,   Plaintiff alleges that  CAMERON COUNTY, TEXAS and its policy makers, specifically the Cameron County Commissioners and Cameron County Judge (collectively referred herein as the "Cameron County Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts. The Cameron County Policymakers had a duty, but failed to implement and/or enforce policies, practices and procedures for the Defendants EDDIE SOLIS Individually and in his official capacity as CAMERON COUNTY CONSTABLE PCT 5, JOSE ANGEL VILLARREAL, CARLOS CORDOVA Individually and in their official capacities as Deputies of CAMERON COUNTY CCONSTABLE Pct. 5 that respected RICARDO TREVINO III's constitutional rights to assistance and protection. Defendant CAMERON COUNTY, TEXAS and its Policymakers, specifically the failure to adequately supervise and discipline the Defendants

EDDIE SOLIS Individually and in his official capacity as CAMERON COUNTY CONSTABLE PCT 5, JOSE ANGEL VILLARREAL, CARLOS CORDOVA Individually and in their official capacities as Deputies of CAMERON COUNTY CONSTABLE PCT 5 implement the necessary policies and the implementation of unconstitutional policies caused RICARDO TEVINO III's unwarranted and excruciating physical and mental anguish and death. The Cameron County Defendants knowingly and consciously disregarded the rights of RICARDO TREVINO III due to their lack of supervision and training described above.

4.      Based upon this conduct as described in greater detail below, Plaintiff has brought this present action against the City of San Benito, Texas, San Benito Police Department, Individual San Benito Police Offices involved in the shooting, Cameron County, Texas, Cameron County Constable Precinct 5 and Individual Constable Deputies involved in the shooting and wrongful death of Ricardo Trevino III for their violations of Ricardo Trevino III's  civil rights violations pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution, Texas Constitution and Texas Law. By this action discussed herein, Plaintiff seeks to shed light on precisely what transpired on December 7, 2018, to hold defendants accountable for their wrongful conduct and to ensure that appropriate remedial measures are taken by the City of San Benito, San Benito Police Department, Cameron County, Texas and Cameron County Constable Precinct 5 to prevent similar tragic killings of innocent individuals in the future.

## II.  <u>PARTIES</u>

5.      Plaintiff APRIL M. FLORES is a person of the full age of majority and a resident of Cameron County Texas. APRIL M. FLORES sues on behalf of herself and as the personal representative of the Estate of Ricardo Trevino III, deceased.

6.      Defendant City of San Benito, Texas is a municipality located in Cameron County, Texas.

The City of San Benito operates the San Benito Police Department ("SBPD"). The City of San Benito funds and operates the SBPD, which, along with the  San Benito City Council, the San Benito City Manager, San Benito Mayor  and Chief of Police are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The SBPD is also responsible for preventive, investigative, and enforcement services for all citizens of The City of San Benito. The City of San Benito may be served with citation herein by and through its agent for service of process, Ruth McGinnis, City Secretary, at 401 N. Sam Houston Blvd, San Benito, Texas 78586 or wherever she may be found.

7.      Defendant Michael Galvan, is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police Department.

8.      Defendant David Rebollado is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police Department.

9.      Defendant Victor Espitia is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police Department.

10.      Defendant Jose Santos is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police

Department.

11.     Defendant Oscar Lara is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police Department.

12.     Defendant Manuel Alvarez is an individual who may be served at the San Benito Police Department at 601 N. Oscar Williams Road San Benito, TX 78586 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the San Benito Police Department.

13.     Defendant Cameron County, Texas funds and operates Defendant Cameron County Constable Pct 5, which, along with the Cameron County Commissioners, the Cameron County Judge and  Eddie Solis Constable Pct 5 are responsible for the implementation of the Constable Pct 5's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. Defendant Cameron County, Texas may be served with citation herein by and through its agent for service of process, Eddie Trevino, Jr., Cameron County Judge, at 1100 E. Monroe Street, Suite 218, Brownsville, Texas 78520 or wherever he may be found.

14.     Defendant Eddie Solis is an individual who may be served at the Cameron County Constable Pct 5 located at 3302 Wilson Road, Harlingen, Texas 78552 or wherever he may be found. He is being sued in his individual and official capacity as an employee of Cameron County and Cameron County Constable Pct 5.

15.     Defendant Jose Angel Villarreal is an individual who may be served at the Cameron County Constable Pct 5 located at 3302 Wilson Road, Harlingen, Texas 78552 or wherever he may be found. He is being sued in his individual and official capacity as an employee of Cameron County and Cameron County Constable Pct 5.

6

16.     Defendant Carlos Cordova is an individual who may be served at the Cameron County

Constable Pct 5 located at 3302 Wilson Road, Harlingen, Texas 78552 or wherever he may be

found. He is being sued in his individual and official capacity as an employee of Cameron County

and Cameron County Constable Pct 5.

## III.
## JURISDICTION AND VENUE

17.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is

brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C.

§1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent

Ricardo Trevino, III by constitutional and statutory provisions. Plaintiff further invokes the

supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims

arising under the laws of the State of Texas.

18.     Venue is proper in this court because the causes of action occurred within the Southern

District of Texas.

## IV.
## FACTS

19.     On or about December 7, 2018 just before 3:00 pm, Ricardo Trevino III was volunteering at

the Templo Bethesda Church in San Benito, Texas with his cousin Betty. Trevino had recently

been involved in a motor vehicle accident in which the vehicle he was in was struck by a tractor-

trailer. Accordingly, Trevino was taking Tylenol for the pain he sustained from said motor vehicle

accident. Trevino's cousin Betty saw Trevino take the Tylenol and called the San Benito Police

Department and told the dispatch that she had seen Trevino take the Tylenol. SBPD officers were

dispatched to the Templo Bethesda Church on a welfare check basis of Trevino. Upon their arrival

at the church, Defendants Victor Espitia and Jose Santos observed Ricardo Trevino III driving

away from the church. Defendant Oscar Lara had just arrived at the church as a backup officer. Defendant Officers Espitia, Santos and Lara then began a pursuit of Ricardo Trevino III in their SBPD squad vehicles even though Ricardo Trevino III had not been accused of committing a crime or doing anything illegal, had no criminal history or was carrying a weapon. Ricardo Trevino III then headed toward Expressway 77 and went South towards F.M. 732 where he exited and then headed South towards U.S. Highway 281. Defendant David Rebollado and then Defendant Manuel Alvarez joined the pursuit

20.     At Approximately 3:00 pm, Defendants Cameron County Constable Pct. 5 Deputies Jose Angel Villarreal and Carlos Cordova heard a report of the pursuit by SBPD on the regional law enforcement communications transmission. Defendants Cameron County Constable Pct. 5 Deputies Jose Angel Villarreal and Carlos Cordova went to join the pursuit even though they were many miles away from the scene at the Cameron County Constable Pct. 5 Office in North Harlingen. Defendant Constable Eddie Solis gave his Deputies Villarreal and Cordova permission to join the pursuit without conferring with SBPD.

21.     Defendant Chief Michael Galvan also joined the pursuit in his personal vehicle as he was off duty at that time. Instead of ordering his officers to stand down from the pursuit, Chief Galvan took the lead in the pursuit and began numerous aggressive driving tactics to stop Ricardo Trevino III. These tactics included but are not limited to trying to force Ricardo Trevino III off the road endangering oncoming traffic, engaging Ricardo Trevino III in such a manner so that the pursuit went through an active school zone and discharging his weapon at Ricardo Trevino III's vehicle during the pursuit endangering the lives of innocent bystanders in the area.

22.     Ricardo Trevino III then headed to Ranch Park Road and stopped at the cul-de-sac at the end of the road. Defendant Officer Rebollado and Defendant Deputy Villarreal moved their squad

vehicles in order to block the path of Ricardo Trevino III's vehicle. Trevino attempted to move out of the cul-de-sac through an opening between the vehicles. Defendant Chief Michael Galvan then moved his vehicle to block said opening thereupon striking Trevino's vehicle. Ricardo Trevino III then began to reverse his vehicle and the Defendant Police Officers and Deputies shot Trevino as he reversed and ended up in a ditch. Defendant SBPD Officers and Deputies continued shooting Trevino even after his vehicle came to a stop in the ditch and Trevino had placed the vehicle in park. Trevino had fully retreated from all of the Defendant SBPD Officers and Deputies and had even raised up his hands. Defendant SBPD Officers and Defendant Deputy Constables surrounded Trevino's vehicle reminiscent of an old-time Western lynch mob determined to carry out an execution. Defendants continued shooting Trevino even though it is clear from all video sources obtained to date that Trevino posed no threat.

23.     During the time that Trevino began to retreat, the Defendant SBPD Officers and Defendant Deputy Constables began firing their weapons at Ricardo Trevino III's vehicle then at Trevino himself. Defendant SBPD Officers and Defendant Deputy Constables fired a total of thirty-one rounds at Ricardo Trevino III and hitting him twelve times in the head, face, and torso, killing Trevino while he sat in his vehicle.

24.     On the day Ricardo Trevino III was killed, Defendant SBPD Officers and Defendant Deputy Constables had no probable cause or reasonable suspicion to believe that Trevino was or attempting to commit a crime. In fact, when Defendants fired the deadly shots at Trevino's vehicle, Trevino had retreated from the confrontation to a stop in a ditch. Trevino did not possess a weapon nor was he attempting to cause bodily harm to Defendants or anyone else. Trevino did not pose an immediate threat to the safety of Defendants or others, when Defendants fatally shot Trevino for no lawful reason.

25.    The City of San Benito, the SBPD and the Policymakers knew of SBPD Defendants' lack of training but did nothing to protect Trevino and the public at large.

26.    Defendant, the City of San Benito has a longstanding record of not providing SBPD officers with adequate training and not preventing excessive force claims by SBPD officers.  As a result of the lack of training and the official custom or policies of the SBPD, the SBPD Defendants' inadequate training resulted in the death of Ricardo Trevino III.

27.    The SBPD failed to provide adequate training to SBPD Defendants' in the use of deadly force.

28.    The SBPD failed to provide adequate training to SBPD Defendants' on proper arrest and confrontation techniques.

29.    The SBPD failed to provide adequate training to SBPD Defendants' on appropriate methods and techniques to control situations similar to the one created SBPD Defendant officer's on December 7, 2018.

30.    The City of San Benito knew or should have known that the training provided to SBPD Defendants was inadequate or nonexistent.

31.    SBPD Defendants' unlawful and unwarranted acts, lack of training and the official customs or policies of the SBPD caused Trevino's wrongful death.

32.    Plaintiff would show that at all times material hereto, SBPD Defendants' were acting under the color of law when they shot and killed Trevino.

33.    In March of 2019 an independent investigation of the events leading up to the shooting death of Trevino was conducted by two former Austin Police Department Officers to determine if SBPD and Defendants Galvan, Espitia, Rebolledo, Santos, Lara, and Alvarezs' pursuit and use of

deadly force was justified. The investigation found Defendants Galvan, Espitia, Rebolledo, Santos, Lara, and Alvarez were guilty of numerous violations of SBPD policy and public safety and found that the SBPD Defendants were not justified in using deadly force in the shooting death of Trevino.

34.     Defendant Cameron County, Texas has a longstanding record of not providing Cameron County Constables and Deputies with adequate training and not preventing excessive force claims by Cameron County Pct. 5 Deputies.  As a result of the lack of training and the official custom or policies of the Cameron County Pct.5, The Defendant Constable and Deputies' inadequate training resulted in the death of Ricardo Trevino III.

35.     Cameron County Constable Pct. 5 failed to provide adequate training Defendants Villarreal and Cordova in the use of deadly force.

36.     Cameron County Constable Pct. 5 failed to provide adequate training to Defendants Villarreal and Cordova on proper arrest and confrontation techniques.

37.     Cameron County Constable Pct. 5 failed to provide adequate training to Defendants Villarreal and Cordova on appropriate methods and techniques to control situations similar to the one created by the actions of Defendants Villarreal and Cordova on December 7, 2018.

38.     Cameron County, Texas knew or should have known that the training provided to Cameron County Constable Pct. 5 and its Deputies was inadequate or nonexistent.

39.      Defendants Solis, Villarreal and Cordovas' unlawful and unwarranted acts, lack of training and the official customs or policies of the Cameron County Constable Pct. 5 caused Trevino's wrongful death.

40.     Plaintiff would show that at all times material hereto, Defendants Solis, Villarreal and

Cordova were acting under the color of law when they shot and killed Trevino.

41.     Moreover, no reasonably competent official would have concluded that the actions of the SBPD Defendants' and Cameron County Defendants described herein would not violate Trevino's constitutional rights. In other words, no reasonably prudent police officer, constable or constable deputy under similar circumstances could have believed that the SBPD Defendants and Cameron County Defendants conduct was justified.

42.     Cameron County, Texas and the Cameron County Policymakers knew of Defendant Villarreal's short temper, erratic behavior and history of multiple fatal shootings of alleged suspects but did nothing to protect Trevino from the harm he suffered.

43.     There is no evidence that the SBPD Defendants, Cameron County Defendants or anyone else were in danger of imminent death or great bodily harm.

44.     Trevino posed no risk to the SBPD Defendants, Cameron County Defendants or any other person in the immediate area. Trevino did not attempt to harm the SBPD Defendants or the Cameron County Defendants and was not committing a crime or reasonably believed to have committed a crime when the SBPD Defendants and Cameron County Defendants shot him while he was sitting in his vehicle.

45.     SBPD Defendants and Cameron County Defendants unlawful and unwarranted acts, lack of training and the official customs or policies of the SBPD and Cameron County caused Plaintiff's injuries. As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

46.     Trevino was twenty-one (21) years old when he was killed by Defendants. He was very well liked and respected by his peers. He was in good health, with a reasonable life expectancy of living at least sixty-three (63) more years to age eighty-four (84). Trevino had a promising future that was ended with his tragic death. Trevino leaves behind his Mother and siblings.

47.     Plaintiff April M. Flores has suffered pecuniary loss from the **_death_** of her son Ricardo Trevino III by virtue  of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. Plaintiff will suffer anguish, grief, and sorrow as a result of her son's **_death_** and is likely to continue to suffer for the foreseeable future. For these losses, Plaintiff seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

## EXCESSIVE FORCE BY SBPD DEFENDANTS (Individually and in their official capacity)
## COUNT 1 (42 U.S.C. § 1983)

48.     Plaintiff incorporates by reference paragraphs 1 through 47 as if fully set forth herein. Plaintiff would show that SBPD Defendant's actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

49.     Plaintiff would show that at all times material hereto, the SBPD Defendants had a duty to avoid infliction of unjustified bodily injury to Trevino, to protect his bodily integrity and to not trample on his constitutional rights.

50.     Plaintiff would show that the SBPD Defendants failed to act as reasonable officers would have acted in the same or similar circumstances. That is, the SBPD Defendants, without justification and the need to do so, used excessive and deadly force as described above and killed Trevino without legal justification. Trevino did not pose an immediate threat to the safety of the SBPD Defendants or others.

51.     The SBPD Defendants were not provoked when they fired multiple shots at Trevino for no lawful or justifiable reason. Trevino died as a result of the multiple gunshots wounds to his head and body. The excessive and deadly force used by the SBPD Defendants was not reasonable, justified nor was it necessary under the circumstances.

52.     The SBPD Defendant's actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in pursuing and restraining individuals in a nonlife-threatening situation.

53.     Plaintiff would show that the SBPD Defendants denied Trevino his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

54.     The force used by the SBPD Defendants was unnecessary, excessive and unreasonable under the circumstances, as Trevino did not pose an immediate threat to the safety of the SBPD Defendants or others and the use of such excessive and deadly force was unnecessary. The SBPD Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Trevino to suffer extreme and severe mental and emotional distress, agony and anxiety.

55.     As a result of these Constitutional violations to Trevino and the injuries he sustained, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## **EXCESSIVE FORCE BY CAMERON COUNTY DEFENDANTS (Individually and in their official capacity)**

### **COUNT 2. (42 U.S.C. § 1983)**

56.     Plaintiff incorporates by reference paragraphs 1 through 55 as if fully set forth herein. Plaintiff would show that the Cameron County Defendants' actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

57.     Plaintiff would show that at all times material hereto, the Cameron County Defendants had a duty to avoid infliction of unjustified bodily injury to Trevino, to protect his bodily integrity and to not trample on his constitutional rights.

58.     Plaintiff would show that the Cameron County Defendants failed to act as reasonable officers would have acted in the same or similar circumstances. That is, the Cameron County Defendants, without justification and the need to do so, used excessive and deadly force as described above and killed Trevino without legal justification. Trevino did not pose an immediate threat to the safety of the Cameron County Defendants or others.

59.     The Cameron County Defendants were not provoked when they fired multiple shots at Trevino for no lawful or justifiable reason. Trevino died as a result of the multiple gunshots wounds to his head and body. The excessive and deadly force used by the Cameron County Defendants was not reasonable, justified nor was it necessary under the circumstances.

60.     The Cameron County Defendant's actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in pursuing and restraining individuals in a nonlife-threatening situation.

61.     Plaintiff would show that the SBPD Defendants denied Trevino his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

62.     The force used by the Cameron County Defendants was unnecessary, excessive and unreasonable under the circumstances, as Trevino did not pose an immediate threat to the safety of the Cameron County Defendants or others and the use of such excessive and deadly force was unnecessary. The Cameron County Defendants embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Trevino to suffer extreme and severe mental and emotional distress, agony and anxiety.

63.     As a result of these Constitutional violations by the Cameron County Defendants to Trevino and the injuries he sustained, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## FAILURE TO TRAIN BY THE CITY OF SAN BENITO
### COUNT 3. (42 U.S.C. § 1983)

64.    Plaintiff incorporates by reference paragraphs 1 through 63 as if fully set forth herein. Plaintiff would show that Defendant City of San Benito's actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

65.    The SBPD Defendants at the scene of the shooting incident were acting under color of law and acting pursuant to customs, practices and policies of the City of San Benito and the SBPD in regards to the use of deadly force as authorized and/or ratified by the City of San Benito Policymakers, specifically the San Benito City Commission, Mayor, San Benito City Manager and Chief Galvan. Trevino was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the City of San Benito failing to provide proper training, adequate supervision or discipline in dealing with individuals such as Trevino in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

66.    With respect to the claims made the basis of this lawsuit, the City of San Benito and the SBPD failed to adequately train its officers on how to deal with individuals during a vehicle pursuit and the subsequent use of deadly force. The failure to train its officers in a relevant respect reflects a deliberate indifference to the City of San Benito, San Benito City Commission, San Benito City Manager and Chief Galvan to the rights of the City's inhabitants and is actionable under 42 U.S.C. §1983

67.    Defendant the City of San Benito under the direction of the San Benito City Commission, Mayor, San Benito City Manager and Chief Galvan developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing

with individuals during a vehicle pursuit. The SBPD's training was designed and implemented by Chief Galvan under the direction of the City Manager and/or the San Benito City Commission to act in this regard.

68.     The San Benito City Commission, Mayor, San Benito City Manager and Chief Galvans' failure to provide adequate training to its officers on how to deal with individuals during a vehicle pursuit and the subsequent use of deadly force reflect deliberate indifference by the City Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Trevino's constitutional rights, including his death, a reasonable probability.

69.     On information and belief, Defendant the City of San Benito, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Trevino failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Trevino during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Trevino from receiving the protection, assistance and care he deserved.

70.     In addition, Defendant City of San Benito and SBPD, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of deadly force. In so doing, Defendant City of San Benito knew that it was acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Trevino's death-- in all reasonable probability would occur.

71.     The City of San Benito's failure to properly train and discipline its deputies was the proximate cause of the violations of Trevino's constitutional rights.

17

## FAILURE TO TRAIN BY CAMERON COUNTY, TEXAS
### COUNT 4. (42 U.S.C. § 1983)

72.     Plaintiff incorporates by reference paragraphs 1 through 71 as if fully set forth herein. Plaintiff would show that Defendant Cameron County's actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

73.     The Cameron County Defendants at the scene of the shooting incident were acting under color of law and acting pursuant to customs, practices and policies of Cameron County and the Cameron County Constable Pct. 5 in regards to the use of deadly force as authorized and/or ratified by the Cameron County Policymakers, specifically the Cameron County Commission, Cameron County Judge, and Constable Solis. Trevino was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by Cameron County failing to provide proper training, adequate supervision or discipline in dealing with individuals such as Trevino in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

74.     With respect to the claims made the basis of this lawsuit, Cameron County and the Cameron County Constable Pct. 5 failed to adequately train its deputies on how to deal with individuals during a vehicle pursuit and the subsequent use of deadly force. The failure to train its deputies in a relevant respect reflects a deliberate indifference to the Cameron County Commission, Cameron County Judge and Constable Solis to the rights of the County's inhabitants and is actionable under 42 U.S.C. §1983.

75.     Defendant Cameron County under the direction of the Cameron County Commission, Cameron County Judge and Constable Solis developed and maintained a policy of deficient training of its constables and deputies in the use of force, including the proper use of deadly force and dealing

with individuals during a vehicle pursuit.

76.     The Cameron County Commission, Cameron County Judge and Constable Solis' failure to provide adequate training to its deputies on how to deal with individuals during a vehicle pursuit and the subsequent use of deadly force reflect deliberate indifference by the County Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Trevino's constitutional rights, including his death, a reasonable probability.

77.     On information and belief, Defendant Cameron County, Texas, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Trevino failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Trevino during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Trevino from receiving the protection, assistance and care he deserved.

78.     In addition, Defendant Cameron County and Cameron County Constable Pct. 5, as applicable, failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of deadly force. In so doing, Defendant Cameron County and Cameron County Constable Pct. 5 knew that it was acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Trevino's death-- in all reasonable probability would occur.

79.     Cameron County and Cameron County Constable Pct. 5's failure to properly train and discipline its deputies was the proximate cause of the violations of Trevino's constitutional rights.

**UNLAWFUL SEIZURE OF A PERSON SBPD DEFENDANTS**
**(Individually and in their official capacity)**
**COUNT 5.**

80.    Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein. Plaintiff would show that SBPD Defendants' actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

81.    SBPD Defendants, acting under color of law, unlawfully detained Trevino without probable cause, or reasonable suspicion that any violation or crime had been committed. Those actions violate Trevino's rights to due process, to equal protection, give rise to plaintiff's claims pursuant to the Fourth Amendment to the Constitution of the United States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.

82.    The City of San Benito and SBPD Defendants violated Trevino' s constitutional rights. Those rights-to due process, equal protection, and not to be detained without probable cause or reasonable suspicion, among others-were clearly established at the time the SBPD Defendants pursued and wrongfully detained Trevino despite Trevino not committing a criminal offense, not being suspected of committing a crime or possessing a weapon.

83.    Trevino did not pose an immediate threat to the safety of the SBPD Defendants or others. The SBPD Defendants' conduct was objectively unreasonable, resulted from a lack of training, and comported with The City of San Benito's illegal de facto policies. Said conduct by SBPD Defendants and Defendant City of San Benito directly resulted in the unlawful shooting death of Trevino.

84.    As a result, Trevino suffered an injury which resulted directly from his wrongful detention and/or seizure which was objectively unreasonable and violation of clearly established law.

85.    The specific acts of the SBPD Defendants were objectively unreasonable and more particularly set forth below:

a.     The SBPD Defendants failed to use an objectively reasonable assessment of the facts when they chose to detain Trevino where there was no probable cause or reasonable suspicion that a crime had been committed or was about to be committed.

b.     The SBPD Defendants failed to provide Trevino with any medical attention despite the fact that Trevino was suffering from mental distress and instead the SBPD Defendants chose to instigate a vehicle pursuit of Trevino with the intent to stop him at all costs which was objectively unreasonable under the circumstances.

86.     The SBPD Defendants' conduct was well defined by law and they knew or should have known that the conduct was below the standard prescribed by law herein.

87.     As a result of the violations of the Constitutional standards set forth herein, Trevino was treated inhumanely and incurred extreme pain and injury when he was wrongfully detained for which Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

### UNLAWFUL SEIZURE OF A PERSON CAMERON COUNTY DEFENDANTS
### (Individually and in their official capacity)
### COUNT 6.

88.     Plaintiff incorporates by reference paragraphs 1 through 87 as if fully set forth herein. Plaintiff would show that the Cameron County Defendant's actions on the occasion in question were wrongful, malicious and reckless in depriving Trevino of his constitutional rights, as alleged more fully below.

89.     The Cameron County Defendants, acting under color of law, unlawfully detained Trevino without probable cause, or reasonable suspicion that any violation or crime had been committed. Those actions violate Trevino's rights to due process, to equal protection, give rise to plaintiff's claims pursuant to the Fourth Amendment to the Constitution of the United

States and 42. U.S.C. § 1983, and their counterparts in the Texas Constitution.

90.    Defendant Cameron County, Texas and the Cameron County Defendants violated Trevino' s constitutional rights. Those rights-to due process, equal protection, and not to be detained without probable cause or reasonable suspicion, among others-were clearly established at the time the Cameron Defendants pursued and wrongfully detained Trevino despite Trevino not committing a criminal offense, not being suspected of committing a crime or not possessing a weapon.

91.    Trevino did not pose an immediate threat to the safety of the Cameron County Defendants or others. The Cameron County Defendants' conduct was objectively unreasonable, resulted from a lack of training, and comported with Cameron County, Texas's illegal de facto policies. Said conduct by Cameron County Defendants and Defendant Cameron County, Texas directly resulted in the unlawful shooting death of Trevino.

92.    As a result, Trevino suffered an injury which resulted directly from his wrongful detention and/or seizure which was objectively unreasonable and violation of clearly established law.

93.    The specific acts of the Cameron County Defendants were objectively unreasonable and more particularly set forth below:

c.    The Cameron County Defendants failed to use an objectively reasonable assessment of the facts when they chose to detain Trevino where there was no probable cause or reasonable suspicion that a crime had been committed or was about to be committed.

d.    The Cameron County Defendants chose to join the vehicle pursuit of Trevino when their assistance was not requested or necessary with the intent to stop Trevino at all costs which was objectively unreasonable under the circumstances.

94.    The Cameron County Defendants' conduct was well defined by law and they knew or should have known that the conduct was below the standard prescribed by law herein.

95.    As a result of the violations of the Constitutional standards set forth herein, Trevino was treated inhumanely and incurred extreme pain and injury when he was wrongfully detained for which Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## PUNITIVE/EXEMPLARY DAMAGES

96.    Plaintiff incorporates by reference paragraphs 1 through 95 as if fully set forth herein. Additionally, and in the alternative, the conduct of all Defendants was done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Trevino' rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against all Defendants in a sum which is within the jurisdictional limits of this court.

## SURVIVAL ACTION

97.    Plaintiff incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

98.    Plaintiff April M. Flores is the Representative for the Estate of Ricardo Trevino III.

99.    Trevino died as a result of the Defendants' wrongful conduct.

100.    Trevino would have been entitled to bring this action against the Defendants if he had lived.

101.    The decedent's right of action for the wrongful conduct against the Defendants survive in favor of heirs, legal representatives, and the estate of the deceased.

102.    Defendants are liable to Plaintiff for the loss of Trevino's life, pain and suffering, and the

violation of his civil rights.  Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## **WRONGFUL DEATH**

103.    Plaintiff incorporates by reference paragraphs 1 through 102 as if fully set forth herein.

104.    By reason of Defendants' wrongful conduct of killing Trevino without the threat of imminent death or serious bodily harm, Defendants are liable for damages.

105.    Defendants' conduct that caused Trevino's death was a producing cause of Trevino's injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and for their acts and infliction of emotional distress caused by the wrongful killing of Trevino.

106.    Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## **DAMAGES ALL DEFENDANTS**

107.    Plaintiff incorporates by reference paragraphs 1 through 106 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff and Trevino:

       a. Actual damages;

       b. Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

       c. Pain and suffering and mental anguish suffered by Edwards prior to his death;

       d. Mental anguish and emotional distress suffered by Plaintiff;

       e. Loss of quality of life;

f.  Funeral and burial expenses;

g. Loss of service;

h. Loss of future earnings and contributions to Plaintiff;

i. Exemplary and punitive damages as well as costs of court;

j. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should

be awarded reasonable attorney's fees for the preparation and trial of this

cause of action, and for its appeal, if required;

k. Prejudgment interest; and

l. Post judgment interest.

108.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## COSTS AND ATTORNEY FEES

109.    Plaintiff incorporates by reference paragraphs 1 through 108 as if fully set forth herein. Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

110.    Plaintiff incorporates by reference paragraphs 1 through 109 as if fully set forth herein. Plaintiff would show that the Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiff's injuries.

## **CONDITIONS PRECEDENT**

111.    Plaintiff reserves his rights to plead and prove the damages to which they are entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or have occurred.

## **TRIAL BY JURY**

112.    Plaintiff has paid a jury fee and demands trial by jury.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

By:    *John T. Blaylock*

John T. Blaylock
State Bar No. 00784302
Federal Bar ID. 32386
Attorney at Law
P.O. Box 390
Harlingen, Texas 78551
(956)428-3142-telephone
(956)428-5256-facsimile
blaylockjohnlaw@yahoo.com
Attorney for Plaintiff