United States District Court
Southern District of Texas
**ENTERED**
May 12, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| APRIL M. FLORES, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:20-cv-169 | |
| § | | |
| CITY OF SAN BENITO, TEXAS, et al., § | | |
|     Defendants. § | | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On October 9, 2020, April M. Flores, both in her capacity as the mother of Ricardo Trevino III and as the representative of his estate, filed suit in this Court. Dkt. No. 1. Trevino was killed in a police shooting after a vehicular chase. Flores sued San Benito Police Chief Michael Galvan and San Benito police officers David Rebollado, Victor Espitia, Jose Santos, Oscar Lara and Manuel Alvarez. Id. Additionally, Flores has sued Cameron County Constable Eddie Solis and deputy constables Jose Angel Villarreal and Carlos Cordova. Id. Flores raised claims of unlawful seizure/false arrest as well as excessive force against all of the officers. Flores also sued the City of San Benito and Cameron County on theories of municipal liability, for failure to train and supervise the officers. Id.

The City of San Benito has filed a motion to dismiss, arguing that Flores has failed to plead sufficient facts to raise a claim of municipal liability. Dkt. No. 10. Espitia, Santos, Lara and Alvarez filed a partial motion to dismiss. Dkt. No. 11. Cameron County, Solis, Villarreal and Cordova filed a motion to dismiss; Solis, Villarreal and Cordova invoked the protections of qualified immunity. Dkt. No. 29. The motions are fully briefed.

After reviewing the record and the relevant caselaw, it is recommended that the motion to dismiss filed by the City of San Benito be granted. It is further recommended that the motion to dismiss filed by Espitia, Santos, Lara and Alvarez be granted in part and denied in part. It should be granted as to the claim regarding: unlawful seizure/false arrest;

1

any torts claims raised under the Texas Constitution; and, any claim to punitive damages under state law.  It should be denied as to any claim for punitive damages under § 1983.

It is also recommended that the motion to dismiss filed by Cameron County, Solis, Villarreal, and Cordova be granted in part, to the extent not deferred as set forth in Dkt. No. 39.  As to Cameron County, it should be granted for failure to state a claim to relief as to municipal liability.  As to Solis, Villarreal and Cordova, it should be granted as to any claim to unlawful seizure/false arrest.  As to Solis, it should be granted as to any claim of excessive force.  As to the claims of excessive force against Villarreal and Cordova, resolution of the motion to dismiss has been deferred for further factual development. Dkt. No. 39.  While the number of individuals is complex, the facts, at this point, are short.

**I. Background**

    **A. Factual Background**

On December 7, 2018, Ricardo Trevino III and his cousin were volunteering at Templo Bethesda Church in San Benito. Dkt. No. 1, p. 7.  Trevino was still recovering from injuries suffered in a recent motor vehicle accident and took some Tylenol to relieve his pain.  Id.  His cousin witnessed Trevino taking the Tylenol and called the San Benito Police Department, for reasons that are not apparent from the complaint. Id.

Police officers Victor Espitia and Jose Santos were dispatched to the church to conduct a welfare check on Trevino, while Officer Oscar Lara arrived as backup. Dkt. No. 1, pp. 7-8.  When the officers arrived, Trevino drove away from the church. Id.  The complaint stated that Trevino "had not been accused of committing a crime or doing anything illegal, had no criminal history [nor was he] … carrying a weapon." Id.  Espitia, Santos and Lara pursued Trevino's vehicle.  At a later point, Officers David Rebollado and Manuel Alvarez joined the pursuit. Id.  No explanation is offered as to why they joined the pursuit. San Benito Police Chief Michael Galvan also joined the pursuit, despite the fact that he was off-duty at the time. Id.

Cameron County Constable Pct. 5 Deputies Jose Angel Villarreal and Carlos Cordova heard about the chase and joined in the pursuit "even though they were many

miles from the scene." Dkt. No. 1, p. 8. Constable Eddie Solis gave Villarreal and Cordova "permission to join the pursuit without conferring with [San Benito police]." Id.

Trevino drove his vehicle down Ranch Park Road, which is a cul-de-sac. Dkt. No. 1, p. 9. When he reached the end of the cul-de-sac, he turned the vehicle around and attempted to escape. Id. Rebollado and Villareal had positioned their police vehicles facing each other in the road, so as to block Trevino's vehicle from being able to escape the cul-de-sac. Id.

Trevino "attempted to move out of the cul-de-sac through an opening between the vehicles." Dkt. No. 1, p. 9. Galvan moved his vehicle to block that opening, striking Trevino's vehicle. Id. As Trevino put his vehicle in reverse, police officers began shooting at him; Trevino's vehicle went into a ditch. Id. Officers continued to shoot at Trevino even after he put the car in park. Id. The complaint stated that officers continued to shoot despite the fact that Trevino "had fully retreated from all officers" and "had even raised up his hands." Id.

The officers fired 31 total shots, striking Trevino 12 times in the "head, face and torso." Dkt. No. 1, p. 9. Trevino died from his injuries on that same date, December 7, 2018.

### B. Procedural Background

On October 9, 2020, April M. Flores, both in her capacity as Trevino's mother and as the representative of his estate, filed suit in this Court. Dkt. No. 1. Flores sued Galvan, Rebollado, Espitia, Santos, Lara, Alvarez, Solis, Villarreal and Cordova in their individual and official capacities. She also sued the City of San Benito and Cameron County on theories of municipal liability. Id.

As to the individual defendants, Flores claims that they used excessive force against Trevino and unlawfully seized him. Dkt. No. 1. As to the municipal defendants, Flores claims that both San Benito and Cameron County failed to adequately train their officers on proper use of force and proper tactics to use in vehicle pursuits. Id.

As to all defendants, Flores seeks punitive and exemplary damages. Dkt. No. 1, p. 23.

Galvan has filed an answer. Dkt. No. 24. Rebollado has not been served or appeared. Dkt. No. 40. The remaining nine defendants have filed motions to dismiss.

### 1. San Benito Motion to Dismiss

On November 22, 2020, the City of San Benito filed a motion to dismiss for failure to state a claim upon which relief can be granted. Dkt. No. 10. The City of San Benito argues that Flores must specifically plead how a particular training program is defective and must pled facts showing a similar pattern of violations that put it on notice that the training was defective. Id. San Benito argues that neither is present in the complaint, mandating dismissal. Id. San Benito also asserts that it is immune from punitive and exemplary damages. Id.

On December 7, 2020, Flores filed a response. Dkt. No. 21. Flores argues that she has sufficiently pled that San Benito failed to "provide proper training, adequate supervision or discipline" to its officers. Id.

On December 10, 2020, San Benito filed its reply brief, arguing that Flores made only conclusory allegations regarding the training programs and did not plead facts regarding any other incidents. Dkt. No. 22.

### 2. Espitia, Santos, Lara, Alvarez Motion to Dismiss

On November 23, 2020, Defendants Espitia, Santos, Lara and Alvarez filed a partial motion to dismiss. Dkt. No. 11. They seek dismissal of the unlawful seizure claim, but not the excessive force claim. Id. They argue that Trevino was never arrested, so he was never seized. Id. They also argue that Flores is not legally entitled to any punitive damages.

It does not appear that Flores filed a response to the motion to dismiss.

### 3. Cameron County, Solis, Villarreal, Cordova Motion to Dismiss

On December 21, 2020, Defendants Cameron County, Solis, Villarreal, and Cordova filed a motion to dismiss. Dkt. No. 29. Cameron County seeks dismissal of any claims against it on the basis that Flores has not pled any similar prior constitutional violations by county law enforcement. Id. Solis, Villarreal and Cordova all invoke the protections of qualified immunity. Id.

On January 4, 2021, Flores filed a response. Dkt. No. 31. In his response, Flores asserts that she has pled sufficient facts to raise a claim of failure to train against Cameron County. Id. She further asserts that Solis, Villarreal and Cordova are not entitled to qualified immunity. Id.

**II. Applicable Law**

    **A. Section 1983**

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

    **B. Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal, for failing to state a claim upon which relief can be granted, is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

**C. Municipal Liability**

A municipality cannot be held liable under § 1983 on a theory of respondeat superior. Monell v. Dep't of Soc. Services, 436 U.S. 658, 691 (1978). Thus, a municipality can be subjected to civil liability if the allegedly illegal conduct is "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Robinson v. Hunt Cty., Texas, 921 F.3d 440, 449 (5th Cir. 2019), reh'g denied (May 16, 2019) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski, 237 F.3d at 578. These elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Id.

6

"A claim for failure to train must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." Speck v. Wiginton, 606 F. App'x 733, 736 (5th Cir. 2015).

As to the first element – the existence of inadequate training – the plaintiff must allege facts "related to the locality's actual training program." Id.

As to the second element – that the municipality acted with deliberate indifference – "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" to meet that standard. Connick v. Thompson, 563 U.S. 51, 62 (2011) (internal quotation marks omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

The Supreme Court has said that, "in a narrow range of circumstances," a plaintiff could use the existence of the incident at issue in the case to prove deliberate indifference, without needing to show a pattern of similar violations. Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997). This is referred to as the single incident exception. Id. The hypothetical example given by the Supreme Court was that if a municipality gave its officers no training at all on the use of deadly force and an untrained officer used deadly force without justification, the decision to forego training would be so derelict that it would constitute deliberate indifference. City of Canton, Ohio v. Harris, 489 U.S. 378, 390, n. 10 (1989).

**D. Qualified Immunity**

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "'One of the most salient benefits of qualified immunity is protection from pre-trial discovery.'" Zapata v.

Melson, 750 F.3d 481, 484-85 (5th Cir. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

The Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." Backe, 691 F.3d at 648. The Court must first find "that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity." Zapata, 750 F.3d at 485 (quoting Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 994 (5th Cir. 1995)). "After the district court finds a plaintiff has so pled, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." Backe, 691 F.3d at 648 (quoting Lion Boulos v. Wilson, 834 F.2d 504, 506 (5th Cir. 1987)) (cleaned up) [1] (emphasis original).

### E. Punitive Damages

"Punitive damages may be awarded in § 1983 cases when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Heaney v. Roberts, 846 F.3d 795, 803 (5th Cir. 2017) (internal quotation marks omitted) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

Municipalities are "immune from the imposition of punitive damages" under § 1983. Skyy v. City of Arlington, 712 F. App'x 396, 401 (5th Cir. 2017) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-71 (1981)).

### III. Analysis

There are three separate motions to dismiss — which raise several overlapping issues — pending before the Court. For ease of understanding, the Court will group and

---

[1] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); see also Brownback v. King, -- U.S. ---, 141 S. Ct. 740 (2021) (using "cleaned up").

restate the issues raised by these motions into four categories: (1) the claims to municipal liability against Cameron County and the City of San Benito; (2) the claims made against Solis, Villarreal, Cordova, all of whom are members of the Cameron County Constables office; (3) the claims made against Espitia, Santos, Lara and Alvarez, all of whom are officers with the City of San Benito; and, (4) the claims for punitive damages made against all defendants.

### A. Municipal Liability

Flores has failed to state a claim upon which relief can be granted as to her claims of municipal liability against Cameron County and the City of San Benito.[2]

As previously noted, Flores must plead facts showing that (1) the municipality's training policy procedures were inadequate; (2) the municipality was deliberately indifferent to the need for better training; and (3) the inadequate training policy directly caused the injuries at issue. Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010).

As to the first element, Flores has pled no facts as to the content or specific inadequacies of how officers are trained by San Benito or Cameron County. She has pled no facts showing that officers were not properly trained on how to conduct vehicle pursuits or appropriate use of force.

As to the second element, again, Flores has pled no facts showing that there was a pattern of similar violations which put the city and county on notice that their training was deficient.[3] Connick, 563 U.S. at 62. As to Cameron County, Flores pleads that Villarreal had a "short temper, erratic behavior and history of multiple fatal shootings of alleged

---

[2] The Court notes that Flores has not raised a claim that Chief Galvan's involvement in the chase and shooting represented city policy based on his position. The Court will not address a claim that was not raised in the complaint and takes no position about whether such a claim would be viable.

[3] To the extent that Flores raises a failure to supervise claim, it fails for this reason. To hold the municipality liable for failure to supervise its employees, Flores would have to plead facts showing that the supervisors knew that constitutional violations were occurring and chose to ignore them. Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003). Thus, dismissal is proper for any failure to supervise claim.

suspects." Dkt. No. 1, p. 12. But that is not the same as pleading a pattern of similar violations. Multiple fatal shootings may or may not be constitutional violations. See Pinedo v. City of Dallas, Tex., 2015 WL 5021393, at *6 (N.D. Tex. Aug. 25, 2015) ("The mere fact that a police officer has shot an unarmed individual does not establish per se that the officer used excessive force.") (emphasis original). Flores has pled no facts "from which the court can infer" that Villarreal's prior fatal shootings "involved the use of excessive force rather than force that was reasonable under the specific circumstances." Id. Furthermore, Flores has pled no facts showing that any City of San Benito officers had prior incidents of a similar nature.

There is a possible exception to this rule – requiring a pattern of similar incidents – where "the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64. This exception has been described as "rare." Id. The Fifth Circuit has said that this exception is "a narrow one, and one that we have been reluctant to expand." Burge v. St. Tammany Par., 336 F.3d 363, 373 (5th Cir. 2003). The Fifth Circuit has also explained that "there is a difference between a complete failure to train, as in Bryan," where the Supreme Court recognized the single incident exception, "and a failure to train in one limited area." Cozzo v. Tangipahoa Par. Council--President Gov't, 279 F.3d 273, 288 (5th Cir. 2002) (emphasis original).

Flores's has failed to plead any facts showing that the officers received no training whatsoever before entering the job. She has generally alleged that Cameron County and the City of San Benito failed to adequately train the officers about specific aspects of the job, such as the use of force and vehicle pursuits. This is not sufficient to plead a total lack of training. Cozzo, 279 F.3d at 288. Thus, Flores has not pled sufficient facts to show that the exception would be applicable.

Flores cannot simply rest on the fact that she alleges that officers may have acted improperly in this case. The Court cannot simply "make the inference that a single alleged incident of misconduct means officers are inadequately trained. That inference is at odds with the law against respondeat superior liability in section 1983 cases, which is a rule

10

premised on the commonsense proposition that officer misconduct is often a result of the independent decisions of officers rather than direction from superiors." Wiginton, 606 F. App'x at 736.

Accordingly, all claims of municipal liability against Cameron County and the City of San Benito should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Furthermore, Flores sued the individual officers in their individual and official capacities. Dkt. No. 1. A suit against a government employee in his or her official capacity "is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, the claims against any individual officer in their official capacity should be dismissed for the same reasons as the claims against San Benito or Cameron County.

### B. Claims Against San Benito Officers

Defendants Espitia, Santos, Lara and Alvarez have sought dismissal of the unlawful seizure claim. The motion to dismiss should be granted.

As an initial matter, Flores refers to this claim as an unlawful seizure claim. Dkt. No. 1. It appears to be a false arrest claim, alleging that the officers seized him without probable cause. Id. The Defendants agree that this claim "should be analyzed under a claim of false or wrongful arrest." Dkt. No. 11, p. 13.

In order to plead a claim for false or wrongful arrest, Flores must plead facts showing that Trevino was arrested without probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).

There is a constitutional right to be free from the unreasonable seizure or arrest of one's person. Brower v. County of Inyo, 489 U.S. 593 (1989). The standard for deciding the reasonableness of an arrest under the Fourth Amendment is identical in both civil and criminal cases. Wooley v. City of Baton Rouge, 211 F.3d 913, 925 (5th Cir. 2000) (citing Soldal v. Cook, 506 U.S. 56 (1992)). For that reason, the Court will cite criminal and civil cases interchangeably.

11

A person is considered "seized," within the meaning of the Fourth Amendment, if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." U.S. v. Mendenhall, 446 U.S. 544, 554 (1980). The Fifth Circuit has held that a police officer shooting at a fleeing suspect, causing them to stop fleeing, is considered a seizure under the Fourth Amendment. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004). When the officers shot at Trevino's vehicle and he stopped driving, then the termination of Trevino's "freedom of movement was accomplished by exactly the means [the officers] intentionally applied." Id. Thus, Flores has pled facts showing that Trevino was constitutionally seized.

Flores must also plead facts showing that the seizure occurred without probable cause to believe that a crime had been committed. This is where her claim fails.

Flores makes a point of stating that Trevino "had not been accused of committing a crime or doing anything illegal, had no criminal history [nor was he] … carrying a weapon," to demonstrate that there was no probable cause for arrest. Dkt. No. 1, p. 8. However, even if the officers were not justified in initially trying to detain Trevino, by fleeing from the police, Trevino gave them probable cause to arrest him.

Trevino led officers on a pursuit. Once the pursuit began, the officers had probable cause to arrest Trevino for evading arrest. TEX. PENAL CODE § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."). Furthermore, even if the officers did not initially have a valid basis to arrest or detain him, they still had probable cause to arrest him for evading them. See Day v. State, 614 S.W.3d 121, 128 n. 31 (Tex. Crim. App. 2020) ("the evading arrest or detention statute allows prosecution even though the initial detention may have been unlawful or unreasonably prolonged"). "Fleeing is anything less than prompt compliance with an officer's direction to stop." Smith v. State, 483 S.W.3d 648, 653 (Tex. App. 2015) (cleaned up).

Accordingly, even if probable cause did not exist when the encounter began, Trevino supplied the officers with probable cause to believe that a crime had been committed. The motion to dismiss should be granted.[4]

**C. Cameron County Constables**

Solis, Villarreal, and Cordova, all of whom are members of the Cameron County Constable's office, seek dismissal, invoking the protections of qualified immunity. The motion to dismiss should be granted as to any false arrest/unlawful seizure claims, but any decision on the use of excessive force should be subject to further factual development.

### 1. False Arrest/Unlawful Seizure

The Court must determine whether these defendants took actions that violated Trevino's constitutional rights and whether those rights were clearly established. Pearson, 555 U.S. at 223. As to this claim, Trevino's constitutional rights were not violated.

A false arrest claim requires Flores to plead facts showing that Trevino was arrested without probable cause. Brown, 243 F.3d at 189. As set out in the preceding section, the officers had probable cause to arrest Trevino for evading police, even if the initial stop was unconstitutional. Day, 614 S.W.3d at 128 n. 31. Accordingly, Solis, Villarreal and Cordova are entitled to dismissal; they have no need of qualified immunity because they did not violate Trevino's rights. Lytle, 560 F.3d at 410.

However, even if the arrest occurred without probable cause, Solis, Villarreal and Cordova would be entitled to qualified immunity. They were reacting to a law enforcement dispatch about a man fleeing arrest. Police are permitted to rely on a dispatch issued by other law enforcement agencies when attempting to detain a suspect. U.S. v. Ibarra-Sanchez, 199 F.3d 753, 759 (5th Cir. 1999) (citing U.S. v. Hensley, 469 U.S. 221 (1985)).

Given this dispatch, these officers could reasonably conclude that probable cause existed for arresting Trevino for evading police. "[I]f a reasonable officer could have

---

[4] The Court notes that Galvan and Rebollado have not filed a motion to dismiss the claim of false arrest/unlawful seizure made against them. Because no motion has been filed, the Court will not sua sponte dismiss this claim, but the foregoing analysis would also appear to be applicable to them.

concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001).

The Court notes that the claim that Trevino was arrested without probable cause is substantively different than the claim that the officers used excessive force in effectuating that arrest. An excessive force claim is "separate and distinct" from a claim of unlawful arrest. Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007). As such, the Court must analyze that claim separately. Id.

### 2. Excessive Force

"To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012).

As to Solis, dismissal of this claim is warranted. Solis "gave his Deputies Villarreal and Cordova permission to join the pursuit without conferring with SBPD," but did not appear to be at the scene of the shooting. Dkt. No. 1, p. 8. There are no facts pled showing that Solis authorized the shooting or had any further involvement after authorizing his deputies to assist in the chase. Thus, he did not use any force against Trevino and this claim should be dismissed for failure to state a claim upon which relief can be granted.

As to Villarreal and Cordova, the Court has found that further factual development is needed in order to rule on the applicability of qualified immunity. Dkt. No. 39. The claims of excessive force against the deputy constables will be addressed in a separate report and recommendation after the further factual development has concluded.

### D. Punitive Damages

Flores has raised claims of punitive damages against all defendants. Her claim to punitive damages should be dismissed as to the municipal defendants, but not as to the individual defendants.

As to the City of San Benito and Cameron County, her claim to punitive damages should be dismissed as a matter of law. The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport, 453 U.S. at

271. The Fifth Circuit has "faithfully applied" this precedent, rejecting all claims to punitive damages made against municipalities. Skyy, 712 F. App'x at 401 (citing Gil Ramirez Grp. v. Houston Indep. Sch. Dist., 786 F.3d 400, 412–13 (5th Cir. 2015) & Stern v. Hinds Cty., 436 Fed. App'x. 381, 382 (5th Cir. 2011)).

As to the individual defendants, the motion to dismiss the punitive damages claim should be granted in part and denied in part.

Flores makes a reference to suing to vindicate Trevino's rights under the Texas Constitution. Dkt. No. 1, p. 20.[5] To the extent that she seeks punitive damages under Texas law, such claims are barred. "[P]arents of the deceased, while they are entitled to maintain an action under the Wrongful Death statute, are not included in [Texas Constitution] article XVI, § 26 and are therefore unable to recover punitive damages." Gen. Chem. Corp. v. De La Lastra, 852 S.W.2d 916, 923 (Tex. 1993). Thus, the motion to dismiss should be granted to the extent that it is raised under Texas law.

Such punitive damages as to the individual defendants, if otherwise appropriate, are permitted under § 1983. They may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Heaney, 846 F.3d at 803. At this stage of the proceedings, the Court will not judge whether any individual defendant's conduct meets this standard. The motion to dismiss should be denied, to the extent that the claim to punitive damages is raised under § 1983.

## IV. Recommendation

Accordingly, it is recommended that the motion to dismiss filed by the City of San Benito be granted for failure to state a claim upon which relief can be granted as to municipal liability. Dkt. No. 10.

---

[5] The Court notes that, to the extent that Flores seeks to raise civil claims to vindicate Trevino's rights under the Texas Constitution, her claim is legally frivolous. "[T]ort damages are not recoverable for violations of the Texas Constitution." Daniels v. City of Arlington, Tex., 246 F.3d 500, 507 (5th Cir. 2001).

It is further recommended that the motion to dismiss filed by Victor Espitia, Jose Santos, Oscar Lara, and Manuel Alvarez be granted in part and denied in part.  It should be granted as to the claimed unlawful seizure/false arrest; any torts claims raised under the Texas Constitution; and, any claim to punitive damages under state law.  It should be denied as to any claim for punitive damages under § 1983.

It is also recommended that the motion to dismiss filed by Cameron County, Cameron County Constables, Pct. 5, Eddie Solis, Jose Angel Villarreal, and Carlos Cordova be granted in part.  As to Cameron County, it should be granted for failure to state a claim to relief as to municipal liability.  Moreover, as to Solis, Villarreal, and Cordova, it should be granted as to any claim of unlawful seizure/false arrest.  As to Solis, it should be granted as to any claim of excessive force.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1).  A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings.  If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on May 12, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge