United States District Court
Southern District of Texas
**ENTERED**
July 25, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| APRIL M. FLORES, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:20-cv-169 |
| § | |
| CITY OF SAN BENITO, TEXAS, et al., § | |
|     Defendants. § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 9, 2020, April M. Flores, in her capacity as the mother of Ricardo Trevino III and as the representative of his estate, filed suit in this Court. Dkt. No. 1. Trevino was killed in a police shooting after a vehicular chase. As relevant here, Flores sued San Benito Police Chief Michael Galvan and San Benito police officers Victor Espitia, Jose Santos, Oscar Lara, and Manuel Alvarez as well as Cameron County deputy constable Jose Angel Villarreal. Id. Her claim is that these officers used excessive force against Trevino, causing his death.

Galvan, Espitia, Santos, Lara, Alvarez, and Villarreal have filed motions for summary judgment; all of them have invoked the protections of qualified immunity. Dkt. Nos. 92, 97. 98. The motions are fully briefed. Dkt. Nos. 99, 100, 101.

After reviewing the record and the relevant caselaw, it is recommended that the motions for summary judgment be granted. There is no genuine dispute of material fact as to whether Galvan, Espitia, Santos, Lara, or Alvarez used any force against Trevino. There is, however, evidence that Villarreal used force against Ricardo Trevino, but that force was not excessive in response to the threat posed by Trevino. Moreover, even if Villarreal used excessive force, he is entitled to the protections of qualified immunity.

**I. Background**

    **A. Factual Background**

Because each of the Defendants have invoked qualified immunity, the Court must judge their actions based on the facts known to them as the underlying incident unfolded.

1

Winzer v. Kaufman Cnty., 916 F.3d 464, 474 (5th Cir. 2019).  The factual background was written with this admonition in mind.

The Court further notes that none of the parties have produced any testimony as to the events leading up to the chase.  The Court will fill in the gaps with claims from the complaint in order to give a fuller picture of the underlying events. No weight is accorded the information from the complaint, it is used merely to provide a complete picture. This is in stark contrast to the evidence submitted, which is discussed in the analysis.

On December 7, 2018, San Benito police were dispatched to the Templo Bethesda Church to conduct a welfare check. Dkt. No. 1, p. 7.  Ricardo Trevino III had been reported as falling ill after taking several ibuprofen pills and a cousin had called emergency services because of her concern. Dkt. No. 98-1, p. 10.

Police officers Victor Espitia and Jose Santos were dispatched to the church to conduct a welfare check on Trevino, while Officer Oscar Lara arrived as backup. Dkt. No. 1, pp. 7-8.  When the officers arrived, Trevino drove away from the church. Id.  At a later point, Officers David Rebolledo and Manuel Alvarez joined the pursuit. Id.  San Benito Police Chief Michael Galvan also joined the pursuit, even though he was off duty at the time. Id.

Cameron County Constable Pct. 5 Deputies Jose Angel Villarreal and Carlos Cordova joined the pursuit after a dispatcher told them that the San Benito police department was requesting assistance with a vehicular pursuit. Dkt. No. 108-2.

Unbeknownst to the officers, Trevino had begun a live broadcast of the chase on Facebook, using his cell phone ("Facebook video"). Dkt. Nos. 98-5, 104.  The cell phone moves around during the video, sometimes showing the view through the front windshield, sometimes through the rear windshield and sometimes it is placed in the center console and shows a view of the vehicle's interior ceiling. Id.  During the periods that show the view through the front windshield, Trevino is driving down a two-lane highway and at least 30 non-police vehicles are seen on the road. Id.

Villarreal eventually became the lead car in the chase. Dkt. No. 108-2.  Villarreal stated that Trevino's vehicle was "traveling at speeds of over 100 [miles per hour]." Id.

Trevino eventually came to a complete stop on Ranch Park Road in San Benito, Texas. Id. Villarreal stepped out of his vehicle, with his gun drawn, and ordered Trevino to exit his vehicle. Id. Despite this instruction, Trevino drove away. Id.

Ranch Park Road ended in a cul-de-sac, which Trevino drove into. Dkt. No. 108-2. Villarreal and another officer parked their cars facing each other in the middle of the street, so as to block Trevino from exiting the cul-de-sac. Id. Trevino tried to drive around the two units, to break the blockade. Id. When that didn't work, he attempted to drive between the two units. Id.

Galvan, who was driving an unmarked police vehicle, parked between the two vehicles, forming a "T" in the road. Dkt. No. 97-2. Body camera footage from Santos shows Trevino accelerating his vehicle into Galvan's and pushing it backward until Galvan places the vehicle in park. Dkt. No. 107. The body camera footage shows that Trevino had his driver's side window down and officers were instructing Trevino to stop. The Facebook video has audio of the officers telling Trevino to stop. The body camera footage shows Trevino putting the car into reverse.

A transcript of the Facebook live video has the following dialogue prior to any shots being fired.

> [Trevino:] You're going to kill me. You're going to kill me. You kill me. You kill me. You're going to kill me. Fuck 'em.
> [Unidentified Officer]: Stop!
> [Trevino:] You're going to kill me.
> [Unidentified Officer]: Stop!
> [Trevino:] You're going to kill me.
> [Unidentified Officer]: Stop!
> [Trevino:] You're going to kill me.
> [Unidentified Officer]: Hey, stop! Stop!

Dkt. No. 98-5, pp. 3-4.

At that point, the Facebook video shows Trevino being shot several times, including through the head. Villarreal has admitted to firing shots; Flores has alleged that Rebolledo also fired shots. Dkt. No. 108-2, p. 2; Dkt. No. 52.

3

Villarreal stated that after watching Trevino intentionally ram into Galvan's vehicle and after seeing Trevino's "disregard for life during the pursuit," he felt that he had "no other option to defend myself and the officers immediately near me" other than to fire shots at Trevino. Dkt. No. 108-2, p. 2.

The complaint alleges that officers fired 31 total shots, striking Trevino 12 times in the "head, face and torso." Dkt. No. 1, p. 9.  Trevino died from his injuries on that same date, December 7, 2018. Id.

**B. Procedural Background**

On October 9, 2020, April M. Flores, in her capacity as Trevino's mother and as the representative of his estate, filed suit in this Court. Dkt. No. 1.  Flores sued Galvan, Rebolledo, Espitia, Santos, Lara, Alvarez, Eddie Solis, Villarreal, and Cordova in their individual and official capacities.  Against the individual officers, Flores made claims of false arrest, excessive force and state tort claims under the Texas Constitution. Id.  She also sued the City of San Benito and Cameron County on theories of municipal liability. Id.  Flores did not file her complaint under penalty of perjury. Id.

On November 22, 2020, the City of San Benito sought dismissal of all claims made against it. Dkt. No. 10.  On November 23, 2020, Espitia, Santos, Lara and Alvarez filed a partial motion to dismiss, seeking dismissal of the false arrest and state tort claims under the Texas Constitution. Dkt. No. 11.  On December 21, 2020, Cameron County, Solis, Villarreal, and Cordova filed a motion to dismiss all claims made against them. Dkt. No. 29.

On May 12, 2021, the undersigned issued a report and recommendation as to all of the motions to dismiss. Dkt. No. 41.  It recommended that the false arrest and state tort claims under the Texas Constitution against Espitia, Santos, Lara and Alvarez be dismissed. Id.  It also recommended dismissal of all claims made against the City of San Benito. Id.  As to Cameron County and Solis, it recommended that all claims made against them be dismissed. Id.  As to Villarreal and Cordova, it was recommended that all claims against them be dismissed, with the lone exception of the excessive force claim. Id.  As to the excessive force claim, further factual development was necessary to determine if either

4

officer was entitled to qualified immunity. Id.  On June 9, 2021, the District Judge adopted the report and recommendation in full. Dkt. No. 44.

On July 7, 2021, Rebolledo filed a motion to dismiss, arguing that the false arrest and state constitutional claims be dismissed for failure to state a claim upon which relief can be granted and that the excessive force claim be dismissed for failure to timely serve him. Dkt. No. 56.

On July 12, 2021, the undersigned issued a report and recommendation as to the claims of qualified immunity by Villarreal and Cordova as to the claim of excessive force. Dkt. No. 57.  It recommended that Cordova was entitled to qualified immunity, but that Villarreal was not, based on the facts as pled by Flores. Dkt. No. 57.  The District Judge adopted this report and recommendation in full. Dkt. No. 60.

On August 27, 2021, Galvan filed a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 66.  Galvan sought dismissal of the unlawful seizure/false arrest claim, any claims for damages under the Texas Constitution and any claims for punitive damages. Id.  Galvan did not seek dismissal of the excessive force claim. Id.

On September 24, 2021, the undersigned issued a report and recommendation as to Rebolledo's motion to dismiss, recommending that it be granted as to the false arrest and state constitutional claims, but that Flores be given additional time to properly serve Rebolledo. Dkt. No. 69.  The District Judge adopted the recommendation as to the false arrest and state constitutional claims, but rejected it as to the failure to serve, finding that the failure to serve was the result of intentional conduct. Dkt. No. 78.  Thus, all claims against Rebolledo were dismissed. Id.

On September 27, 2021, the undersigned issued a report and recommendation as to Galvan's motion for judgment on the pleadings, recommending that it be granted in full. Dkt. No. 72.  The District Judge adopted the report and recommendation in full. Dkt. No. 76.

Thus, after all the motions to dismiss were addressed, the only claims remaining were the claims of excessive force against Galvan, Espitia, Santos, Lara, Alvarez, and Villarreal.

Each of those Defendants has filed a motion for summary judgment, invoking the protections of qualified immunity. Dkt. Nos. 92, 97, 98. Flores filed responses to each motion for summary judgment, asserting that she has produced or pled sufficient facts to show that none of the officers are entitled to qualified immunity. Dkt. Nos. 99, 101.

## II. Applicable Law

### A. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

### B. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo

Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists when evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). The Court notes that "[u]nsworn pleadings are not, however, competent summary judgment evidence" Dorsett v. Bd. of Tr. for St. Colleges Univ., 940 F.2d 121, 124 (5th Cir. 1991); see also Chester v. Samuels, 740 Fed. App'x 410, 411 (5th Cir. 2018) (because the complaint "is unverified, it does not constitute competent summary judgment evidence"). If a complaint has been filed under penalty of perjury, it is considered to be verified and is competent summary judgment evidence. Schreane v. Beemon, 575 Fed. App'x 486, 490 n. 1 (5th Cir. 2014).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of any proof,"

7

the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F. 3d at 1075.

Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted). The principle of not making credibility determinations is somewhat changed when there is a video of the events in question. The Court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011). The Court must view "the facts in the light depicted by the videotape," and if a party's version of events is "utterly discredited" by the video, the Court should rely on the video. Scott v. Harris, 550 U.S. 372, 381 (2007).

### C. Excessive Force

"To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012) (quoting Collier v. Montgomery, 569 F.3d 214, 218 (5th Cir. 2009)).

In determining whether the use of force was excessive and unreasonable, the Court is to be guided by "the facts and circumstances of each particular case." Graham v. Connor, 490 U.S. 386, 396 (1989). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (internal quotation marks omitted).

### D. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously

permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "'One of the most salient benefits of qualified immunity is protection from pre-trial discovery.'" Zapata v. Melson, 750 F.3d 481, 484-85 (5th Cir. 2014) (quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012)).

Qualified immunity is "a defense against an individual capacity lawsuit." Sanders-Burns v. City of Plano, 594 F.3d 366, 378 (5th Cir. 2010). "Qualified immunity gives government officials breathing room to make reasonable, but mistaken judgments." Thompson v. Mercer, 726 F.3d 433, 437 (5th Cir. 2014) (internal citation omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"At summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith." Cole v. Carson, 802 F.3d 752, 757 (5th Cir. 2015). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." Cass v. City of Abilene, 814 F.3d 721, 728 (5th Cir. 2016) (internal quotations omitted).

The plaintiff's burden has been described as a "demanding" one. Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015). The plaintiff must establish: (1) that the defendant's actions violated the plaintiff's constitutional rights; and (2) that those rights were clearly established at the time of the defendant's actions. Pearson v. Callahan, 555 U.S. 223 (2009). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (internal quotation marks omitted).

In deciding a motion for summary judgment based on the invocation of qualified immunity, the Court must engage in two separate inquiries: "(1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of clearly established law." Carroll v. Ellington, 800 F.3d 154, 169 (5th Cir. 2015) (quoting Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 457 (5th Cir. 2001)) (internal quotation marks omitted).

**III. Analysis**

As an initial matter, the Court notes that Flores did not file any evidence in opposition to the motion for summary judgment. Flores did cite to her complaint. See Dkt. No. 101, p. 7 (arguing that she "pled" facts showing a genuine dispute of material fact). However, the complaint was not filed under penalty of perjury and does not constitute competent summary judgment evidence. Chester, 740 Fed. App'x at 411. The Court has considered the evidence presented by the Defendants as well as any other evidence in the record in deciding this motion. See Atkins v. Salazar, 455 Fed. App'x 385, 396 (5th Cir. 2011) (When deciding a motion for summary judgment, the Court may consider the entire record and not just the portions highlighted by the parties in their motions.). The Court has given the greatest evidentiary weight to the Facebook and body camera videos, as they provide the most objective evidence of what transpired. Carnaby, 636 F.3d at 187.

As to each of the remaining individual defendants, the Court's task is the same: to determine if Flores has shown that they are not entitled to qualified immunity because they used excessive force against Trevino, in violation of established law. As to Galvan, Espitia, Santos, Lara, and Alvarez, the Court finds that qualified immunity is unnecessary, because there is no evidence that any of those defendants used force against Trevino. As to Villarreal, the Court finds that Flores has not met the burden of negating Villarreal's entitlement to qualified immunity. As such, all of the motions for summary judgment should be granted.

**A. Galvan, Espitia, Santos, Lara, Alvarez**

As to these defendants, there is no evidence in the record that any of them used any force which caused any injuries to Trevino.

It is beyond dispute that Trevino was injured – fatally so – when officers fired shots into his vehicle. There is no evidence in the record that Trevino was injured prior to that moment. Santos, Lara, and Alvarez have stated under oath that they never discharged a weapon at Trevino. Dkt. Nos. 92-2, 92-3, 92-4. Flores has produced no evidence which contradicts these statements. Little, 37 F.3d at 1075 (in order for there to be a genuine issue of material fact, both parties must submit "evidence of contradictory facts"). As such, there

is no evidence that Santos, Lara, or Alvarez used any force against Trevino or caused any injuries.

Espitia and Galvan have stated under oath that they fired one shot at Trevino and that their shots missed. Dkt. Nos. 92-5, 97-2.  Again, Flores has produced no evidence which contradicts these statements, so there is no genuine issue of material fact. Little, 37 F.3d at 1075.  As such, there is no evidence that Espitia or Galvan caused any injuries to Trevino.

Because there is no genuine dispute of material fact as to whether Santos, Lara, Alvarez, Espitia, or Galvan used force which caused an injury to Trevino, the motion for summary judgment should be granted. See Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 747 (5th Cir. 2001) ("Summary judgment is only proper where no material issue of fact exists as to any element of the claim").  Furthermore, none of these defendants need the protections of qualified immunity because there is no genuine dispute of material fact that they violated Trevino's constitutional rights.  "If [the Court] determine[s] that the alleged conduct did not violate a constitutional right, [the qualified immunity] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009). As such, the Court finds that qualified immunity is unnecessary in this case, as to these defendants.

Flores argues that the officers should be held liable because these defendants "did not have probable cause or reasonable suspicion to believe that Trevino was or attempting to commit a crime, that Trevino possessed a weapon or that Trevino was a danger to Defendant Police Officers, Constable Deputies, or anyone else." Dkt. No. 99, p. 8.  Despite this assertion, the officers did have probable cause to stop Trevino.

Even if the officers were not justified in initially trying to detain Trevino, when Trevino fled, he gave them probable cause to arrest him. Day v. State, 614 S.W.3d 121, 128 n. 31 (Tex. Crim. App. 2020).

Trevino led the officers on a pursuit.  Once the pursuit began, the officers had probable cause to arrest Trevino for evading arrest. TEX. PENAL CODE § 38.04(a) ("A

11

person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."). Furthermore, even if the officers did not initially have a valid basis to arrest or detain him, they still had probable cause to arrest him for evading them. See Day, 614 S.W.3d at 128 n. 31 ("the evading arrest or detention statute allows prosecution even though the initial detention may have been unlawful or unreasonably prolonged"). "Fleeing is anything less than prompt compliance with an officer's direction to stop." Smith v. State, 483 S.W.3d 648, 653 (Tex. App. 2015) (cleaned up)[1].

Accordingly, even if probable cause did not exist when the encounter began, Trevino supplied the officers with probable cause to believe that a crime had been committed. As such, Flores's argument is not supported by the record.

Flores also argues that the officers should be held liable because the chase was unnecessary. "Instead of reasonably checking on Trevino at a later time, [the officers] escalated a welfare check into a pursuit that ultimately led the shooting death of an unarmed individual that had not committed a crime or was an immediate threat to anyone." Dkt. No. 99, p. 8. The Court will put aside, for the moment, the claim that a man traveling in excess of 100 miles per hour down a two-lane highway was not "an immediate threat to anyone."

Even so, this argument has been consistently rejected by the Fifth Circuit. The focus is not on whether "the force would have been avoided if law enforcement had followed some other police procedures." Thompson, 762 F.3d at 440 (internal quotation marks omitted). The focus is on whether Trevino posed a serious enough threat of physical harm that the force used against him was reasonable. Id. Because these officers did not use any force against Trevino, for which reason any claim of excessive force is unsupported.

---

[1] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3 (Md. Ct. Spec. App. Dec. 1, 2017); see also Flores-Abarca v. Barr, 937 F.3d 473, 479-81 (5th Cir. 2019) (using "cleaned up").

Accordingly, summary judgment is appropriate as to the excessive force claims against Galvan, Espitia, Santos, Lara, Alvarez.

### B. Villarreal

As to Villarreal, the Court finds that while he used injury-causing force against Trevino, the force was not excessive. Even if the force is considered to be excessive, he is entitled to the protections of qualified immunity.

The Court begins by noting that "[a]n officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009). The Supreme Court has concluded that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Scott v. Harris, 550 U.S. 372, 386 (2007).

The record is clear that Trevino's actions risked the lives of innocent bystanders. He clearly led police on a chase; a review of his Facebook live video showed that at least 30 other vehicles – non-police vehicles – were on the road during the chase. Dkt. No. 104. This count almost certainly underestimates the number of drivers on the road during the chase; the video only intermittently shows the view through the front window.

The Supreme Court has addressed a case with facts highly similar to this one. In that case, a man led police on a chase that "passed more than two dozen other vehicles, several of which were forced to alter course." Plumhoff v. Rickard, 572 U.S. 765, 776 (2014). The man's vehicle came to a temporary stop, but the front bumper of his car was flush with a police car and his wheels were spinning as he attempted to push the cruiser out of the way. Id. The man then "threw the car into reverse" and the officers began shooting at him, killing him. Id., at 776-777. The Supreme Court concluded that "at the moment when the shots were fired, all that a reasonable police officer could have concluded was that Rickard was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." Id., at 777. Accordingly, the

Supreme Court held that "the police acted reasonably in using deadly force to end that risk." Id.

The same is true in this case. Trevino led officers on a long chase, which endangered at least 30 other motorists on a two-lane highway. After being cornered into a cul-de-sac, Trevino intentionally smashed his car into an occupied police cruiser to evade arrest. At the moment that the deadly shots were fired, Trevino had thrown his vehicle into reverse and had not unambiguously surrendered. A reasonable officer in Villarreal's position could easily conclude that Trevino had reversed the vehicle to be able to evade the blockade and resume the chase, endangering the lives of officers and other motorists.

Flores argued that "Trevino had clearly given himself up" at the time that Villarreal fired his shots. Dkt. No. 101, p. 7. This contention is not supported by the record. In the moments before being shot, Trevino told the officers, "You're going to kill me. You're going to kill me. You kill me. You kill me. You're going to kill me. Fuck 'em." Dkt. No. 98-5, p. 3. The officers told him, "Stop!" and Trevino repeatedly told them, "You're going to kill me" and never stated that he was surrendering or put his hands up in clear surrender. Dkt. No. 98-5, p. 4. Trevino also never put his car into park. Neither Trevino's Facebook live video, nor the officer body camera videos, show that Trevino had clearly surrendered at the time that he was shot.

This is not a case where officers continued firing after Trevino was "clearly incapacitated" or had "clearly given himself up." Plumhoff, 572 U.S. at 777. Rather, Villarreal was "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force" that was necessary to end the threat posed by Trevino. Craig v. Martin, 26 F.4th 699, 705 (5th Cir. 2022). Given the danger posed by Trevino to officers and bystanders, and the fact that Trevino was apparently reversing his vehicle to continue the threat, Villarreal was justified in using deadly force to end the threat.

Furthermore, even if Villarreal was not justified in using deadly force, he is still entitled to the protections of qualified immunity.

As an initial matter, to overcome qualified immunity in an excessive force case, "the law must be <u>so</u> clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." <u>Morrow v. Meachum</u>, 917 F.3d 870, 876 (5th Cir. 2019) (emphasis original).

It was not clearly established in December 2018 – when the shooting occurred – that police officers could not use deadly force to end a high speed chase. Indeed, the case law pointed to just the opposite conclusion. As the Fifth Circuit has noted, there have been at least three recent Supreme Court cases holding that officers were entitled to qualified immunity for using deadly force to end a high speed chase. <u>Morrow</u>, 917 F.3d at 876-77 (citing <u>Plumhoff</u>, 572 U.S. at 769-70; <u>Mullenix v. Luna</u>, 577 U.S. 7, 11-12 (2015); <u>Scott</u>, 550 U.S. at 375-86).

Flores has not identified a single precedential case holding that an officer violated a person's constitutional rights by shooting them to stop a high speed chase. This failure "alone dooms [her[ case here." See <u>Vann v. City of Southaven, Mississippi</u>, 884 F.3d 307, 310 (5th Cir. 2018) (holding that the plaintiff's failure to cite any case law showing that a right was clearly established is fatal to their claim). There is simply no basis to conclude that Villarreal violated Trevino's clearly established constitutional rights.

To the extent that Villarreal used excessive force, he is entitled to the protections of qualified immunity. <u>Morrow</u>, 917 F.3d at 879. For that reason, summary judgment is appropriate.

## IV. Recommendation

It is recommended that the motions for summary judgment filed by Victor Espitia, Jose Santos, Oscar Lara, Manuel Alvarez, Michael Galvan, and Jose Angel Villarreal be granted. Dkt. Nos. 92. 97, 98. It is further recommended that the Court enter a judgment that Plaintiff April M. Flores take nothing in this case.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge

is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on July 25, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge